**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
*tcarpenter@carlsonlynch.com*
Scott G. Braden (CA 305051)
*sbraden@carlsonlynch.com*
1350 Columbia St. Ste. 603
San Diego, CA 92101
Tel: (619) 762-1910
Fax: (619) 756-6991

*Attorneys for Plaintiff
and the Proposed Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY COVELL, individually and on behalf of all others similarly situated | Case No. 3:19-cv-01613-BEN-WVG |
| Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §§ 227 *ET SEQ.* AND 47 C.F.R. § 64.1200) |
| AMAZING LASH STUDIO FRANCHISE LLC, N/K/A NSG NORTHERN SUN GROUP, LLC, an Arizona limited liability company; AMAZING LASH FRANCHISE, LLC, a Delaware limited liability company; LA COSTA AMAZING LASH STUDIO, an unknown entity, and DOES 4-100, inclusive, | [DEMAND FOR JURY TRIAL] |
| Defendants. | |

- 1 -

**INTRODUCTION**

Plaintiff Brittany Covell ("Plaintiff") brings this Second Amended Complaint on behalf of herself and all others similarly situated for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of AMAZING LASH STUDIO FRANCHISE LLC, N/K/A NSG NORTHERN SUN GROUP, LLC ("NSG"), AMAZING LASH FRANCHISE, LLC ("Amazing Lash Franchise"), and LA COSTA AMAZING LASH STUDIO ("La Costa Studio") (collectively, "Defendants"), for willfully and/or negligently contacting Plaintiff and members of the Class, as alleged herein, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.* and thereby invading the privacy of Plaintiff and the Class and causing additional harm as alleged herein.

## I. NATURE OF THE ACTION

1. Defendant NSG formerly owned the franchise brand "Amazing Lash Studio" which currently maintains 245 "Amazing Lash Studio" franchise locations in the United States, including 37 in California. NSG reportedly sold the brand to a company known as Wellbiz Brands, Inc., in or about August 2018. Wellbiz Brands (not a party to this action) is the corporate parent of Defendant Amazing Lash Franchise, which manages the implementation of all Amazing Lash Studio franchises in the United States, and assists and/or directs their operational activities including marketing and promotional activities, as alleged herein. La Costa Studio is one such franchise located at 3457 Via Montebello, Suite 152, Carlsbad, CA 92009.

2. Prior to NSG's reported sale of the "Amazing Lash" brand to Wellbiz Brands in or about August 2018, Defendant NSG, with the active assistance of its franchise locations, including La Costa Studio, obtained Amazing Lash customers' cellular telephone numbers through the central Amazing Lash Studio website and in its retail franchise locations. Defendants NSG and La Costa Studio then sent, or caused to be sent, marketing messages to customers via text without obtaining their prior express written consent. Defendant NSG, with the active assistance of its franchise locations, including La

Costa Studio, did not provide adequate disclosures about its telemarketing messages. After acquiring its customers' information, including cellular telephone numbers, Defendant NSG, with the active assistance of its franchise locations, including La Costa Studio, repeatedly and intentionally violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and 47 C.F.R. § 64.1200 by sending marketing and advertising messages to its customers' cell phone via SMS texting.

3. This scheme was continued following NSG's reported sale of the "Amazing Lash" brand to Wellbiz Brands in or about August 2018, when Defendant Amazing Lash Franchise, with the active assistance of its franchise locations, including La Costa Studio, continued to obtain Amazing Lash customers' cellular telephone numbers through the central Amazing Lash Studio website and in its retail franchise locations. Defendant Amazing Lash Franchise, with the active assistance of its franchise locations, including La Costa Studio, then sent, or caused to be sent, marketing messages to customers via text without obtaining their prior express written consent. Defendant Amazing Lash Franchise, with the active assistance of its franchise locations, including La Costa Studio, did not provide adequate disclosures about its telemarketing messages. After acquiring its customers' information, including cellular telephone numbers, Defendant Amazing Lash Franchise, with the active assistance of its franchise locations, including La Costa Studio, repeatedly and intentionally violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and 47 C.F.R. § 64.1200 by sending marketing and advertising messages to its customers' cell phone via SMS texting.

4. As alleged hereinbelow, prior to and following the sale of the "Amazing Lash" brand, franchisors, NSG and, subsequently, Amazing Lash Franchise did exercise control and/or actively participated in the transmission TCPA-violative text messages to Amazing Lash customers and the public.

## II.    THE TCPA

5. Congress was prompted to pass the TCPA due to "[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls

SECOND AMENDED CLASS ACTION COMPLAINT

dispatched to private homes …." *Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 744 (2012). The TCPA was designed to prevent calls and messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff.

6.     In enacting the TCPA, Congress intended to give consumers a choice as to how telemarketers and creditors can contact them, and made specific findings that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." TCPA, Pub. L. No. 102–243, § 2 (10), 105 Stat. 2394 (1991). And since "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer," then "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* §§ 2(11)-(12), 105 Stat. 2394-95.

7.     The Ninth Circuit has held that under the TCPA, it is "unlawful 'to make any call' using an [automatic telephone dialing system]," and "[w]hile the TCPA does not define 'call,' the FCC has explicitly stated that the TCPA's prohibition on ATDSs 'encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . . .'" *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009) (*quoting In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003)). Therefore, "a text message [SMS message] is a 'call' within the meaning of the TCPA." *Id.*

8.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their

owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

9. An "automatic telephone dialing system" means "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The "clear language of the TCPA 'mandates that the focus must be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012) (*quoting Satterfield,* 569 F.3d at 951) (emphasis in original) (internal quotations omitted). The system "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.*

10. Effective October 16, 2013, prior express *written* consent is required to initiate or cause to be initiated any telephone call (or text) that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. §§ 64.1200(a)(1)(iii) and (2). Under this regulation, the only instances in which the prior express consent does not need to be in writing are when a call is made for emergency purposes, when a call is made by or on behalf of a tax-exempt nonprofit organization, or when a call that delivers a health care message is made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule. *See* 47 C.F.R. §§ 64.1200(a)(2).

11. Paragraphs (a)(1)(i) through (iii) of 47 C.F.R. § 64.1200 read as follows:

No person or entity may: (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call *(other than a call made for emergency purposes* or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice:

(i) To any emergency telephone line, including any 911 line and any emergency line of a hospital, medical physician or service office, health

SECOND AMENDED CLASS ACTION COMPLAINT

care facility, poison control center, or fire protection or law enforcement agency;

(ii)     To the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii)    To any telephone number assigned to a paging service, ***cellular telephone service,*** specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 C.F.R. § 64.1200(a)(1)(i) through (iii) (emphasis added).

12.     According to 47 C.F.R. § 64.1200(f)(8):

As used in this section: . . . The term prior express written consent means ***an agreement, in writing, bearing the signature of the person called*** that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i)      The written agreement shall include a ***clear and conspicuous disclosure*** informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

(ii)     The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

C.F.R. § 64.1200(f)(8) (emphasis added).

SECOND AMENDED CLASS ACTION COMPLAINT

13.    As alleged below, none of Defendants acquired express written consent from Amazing Lash customers or the public prior to transmitting, or causing to be transmitted, the TCPA-violative text messages, including the SMS text messages received by Plaintiff and the Class, as alleged herein.

14.    As indicated by 47 C.F.R. § 64.1200(a)(1)(iii), text messages, including those sent, or caused to be sent, by Defendants, and each of them, using an automatic telephone dialing system to the cellular telephones belonging to Plaintiff and the Class are covered by this regulation.

15.    As stated by 47 C.F.R. §§ 64.1200(a)(1)-(2), businesses, including Defendants, and each of them, are required to obtain prior express written consent before sending texts using an automatic telephone dialing system to cellular telephones, including those belonging to Plaintiff and the Class, if the texts are not sent for emergency purposes, the business is not a tax-exempt nonprofit organization, and/or it does not deliver health care messages to customers as a covered entity or a business associate under HIPAA.

16.    In direct disregard of these regulations, Defendants sent, or caused to be sent, advertising and/or telemarketing text messages to Plaintiff and putative Class members. Plaintiff did not provide her prior express written consent any Defendant to receive these texts.

### III.    JURISDICTION AND VENUE

17.    This Court has original jurisdiction over each Defendant and the claims set forth below pursuant to 28 U.S.C. § 1331 because this action arises from a violation of federal law.

18.    This Court has personal jurisdiction over each Defendant because Defendants do, or actively did during the Class Period alleged herein, business in the State of California, directly and/or indirectly, including within the Southern District of California. During the relevant period each Defendant has accepted payment in this District for the transaction of business, which has caused each Defendant to incur both obligations and liabilities in this District.

19.     Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiff resides in this District, and the harm occurred in this District because Plaintiff was texted and/or caused to be texted by Defendants La Costa Studio and/or Amazing Lash Franchise and/or NSG here.

## IV.  **PARTIES**

### A. PLAINTIFF

20.     Plaintiff Brittany Covell resides in San Diego, California. Plaintiff is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39). Plaintiff received text messages to her cellular telephone marketing and advertising "Amazing Lash" brand products and services using an automatic telephone dialing system even though she did not grant prior express written consent to any Defendant to do so.

### B. DEFENDANTS

#### 1.  Amazing Lash Franchise

21.     Defendant Amazing Lash Franchise is a limited liability company incorporated in the state of Delaware with its principal place of business at 9780 Meridian Blvd., Suite 300, Englewood, CO 80112.  Amazing Lash Franchise franchises the "Amazing Lash" brand to franchisees across the United States, including 37 locations in California.  Amazing Lash Franchise, through its franchisees, markets and sells its products and eyelash extension services to thousands of consumers in California and across the United States. Amazing Lash Franchise is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39).

22.     During the relevant time period, and at least following August 2018, Amazing Lash Franchise asserted and exerted complete direction, supervision over, and control over the operations and business of the Amazing Lash Studio franchise locations, including the La Costa Studio, intermixing and intermingling the business of Amazing Lash Franchise and its franchisees, including the La Costa Studio, such that no genuine distinction can be

SECOND AMENDED CLASS ACTION COMPLAINT

made between the purportedly different entities with regard to the issues which are the subject of this action.

23.     Plaintiff is informed and believes and thereon alleges that the "Amazing Lash" brand and image are extremely valuable to Amazing Lash Franchise.  To ensure that the brand is preserved and grows in value, Amazing Lash Franchise requires all of its affiliates to spend significant amounts of time and money in marketing the Amazing Lash brand. Amazing Lash Franchise provides instruction, assistance, supervision, and direction concerning such marketing practices. Moreover, Amazing Lash Franchise reserves and maintains actual and ultimate control over all marketing done by anyone with regard to the Amazing Lash brand. In this context, Amazing Lash Franchise preserves for itself a contractual right to terminate its relationship with any affiliate or franchisee who fails to market the Amazing Lash brand as approved or directed by Amazing Lash Franchise. Such a termination would create a significant financial hardship for the affiliate or franchisee, likely putting them out of business. In this context, La Costa Studio and other franchisees of Amazing Lash Franchise engaged in the marketing practices referenced in this Complaint only with the approval or direction of Amazing Lash Franchise.

24.     The allegations stated in the paragraphs 22 and 23 are supported by the following:

   a.   During the relevant time, and at least following August 2018, Amazing Lash Studio franchises, including the La Costa Studio, did not, and do not, maintain or operate independent websites for any purpose, including marketing or scheduling customer appointments. Appointment booking and other information regarding the Amazing Lash brand can only be found online through Amazing Lash Franchise's central website.[1]

---

[1] *See* https://www.amazinglashstudio.com/. In the First Amended Complaint ("FAC"), Plaintiff alleged that Amazing Lash Franchise was the franchisor of "over 200 independently owned and operated locations …" Dkt. No. 5 (FAC), ¶ 13.  However, this

b.  Amazing Lash Franchise operates a separate web address for purposes of enticing and providing information to potential franchisees to join to the "Amazing Lash" brand.[2]  On that website, potential franchisees or other interested persons can obtain information on becoming a franchisee.  On information and belief, Amazing Lash Franchise provides a "Franchise Investment Report" through the website upon request, which, Plaintiff is informed and believes and thereon alleges, describes the Amazing Lash business model and the services Amazing Lash Franchise will and does provide to its franchisees, including La Costa Studio, and which indicates that Amazing Lash Franchise is directly involved in and/or directs its franchisees' marketing activities, including the systems used for the transmission of marketing texts to Amazing Lash customers.

c.  Amazing Lash franchisees, including La Costa Studio, do not maintain independent Facebook, Twitter, LinkedIn, or Instagram accounts.  Rather, each franchise location can only be accessed through on social media platforms, if at all, through a single social media account that is maintained and operated by franchisor, Amazing Lash Franchise.

d.  Amazing Lash Franchise's website contains numerous video testimonials from franchisees and "regional developers" discussing their respective

_____

allegation was premised solely on representations contained in Defendant Amazing Lash Franchise's website.  Since this action was initiated, Defendant Amazing Lash Franchise appears to have deleted any language from its website representing that franchisees are "independently owned and operated."

[2] *See* https://franchising.amazinglashstudio.com/?_ga=2.157937976.32798987.1579757493-306441619.1579757493&_gac=1.7531014.1579806229.EAIaIQobChMIoNqH4rSa5wIV E9RkCh0qxAvcEAAYASAAEgIuSvD_BwE.

SECOND AMENDED CLASS ACTION COMPLAINT

experience with the franchise business model and the Amazing Lash brand. In these videos, attesters discuss the "partnership" between franchisees and franchisor, the "structure" of the franchise relationship and refer to a "franchising guide" that will produce success for franchisee's if they "follow the recipe for success of other Amazing Lash franchisees and follow the franchising guide."

    e. Amazing Lash Franchise and its franchisees, including La Costa Studio, engage in a business model wherein customers pay for a recurring subscription membership package, which permits them to receive a set amount of Amazing Lash products and/or services from *any* Amazing Lash franchise location nationwide, including La Costa Studio.

    25.    Accordingly, Amazing Lash Franchise implements marketing, advertising, and operations managements at its franchise locations, including the La Costa Studio.

### 2. NSG

    26.    Defendant NSG was at all times relevant hereto an Arizona limited liability company with its principal place of business at 9383 East Bahia Drive, Ste. 100, Scottsdale, Arizona 85260. NSG is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39).

    27.    As alleged hereinabove, NSG purportedly was the former owner of the franchise brand "Amazing Lash Studio" under the name, Amazing Lash Studio Franchise LLC, and reports to have sold the brand to Wellbiz Brands, Inc., in or about August 2018. During the relevant time period, and at least prior to August 2018, NSG asserted and exerted complete direction, supervision over, and control over the operations and business of the Amazing Lash Studio franchise locations, including the La Costa Studio, intermixing and intermingling the business of NSG and its franchisees, including the La Costa Studio, such that no genuine distinction can be made between the purportedly different entities with regard to the issues which are the subject of this complaint.

SECOND AMENDED CLASS ACTION COMPLAINT

28.     Plaintiff is informed and believes and thereon alleges that the allegations contained above in paragraphs 23-24 with respect to Defendant Amazing Lash Franchise's control over and/or involvement in the business of the Amazing Lash franchisees, including La Costa Studio, were equally applicable to Defendant NSG during the relevant time period, and at least prior to August 2018, with respect to its control over and/or involvement in the business of the franchisees, including La Costa Studio, and Plaintiff thus incorporates those allegations contained in paragraphs 23 and 24 against Defendant NSG as though fully set forth herein.

29.     Plaintiff is further informed and believes and thereon alleges that the text-spam she experienced was a practice implemented originally by NSG, along with its franchisees, including La Costa Studio, which was then inherited and continued by Defendant Amazing Lash Franchise and its franchisees, including La Costa Studio, following the purported sale of the Amazing Lash brand in or about August of 2018.

30.     Accordingly, NSG, during the relevant time period and at least prior to August 2018, implemented the marketing, advertising, and operations managements at its franchise locations, including the La Costa Studio.

### 3.  La Costa Studio

31.     Defendant La Costa Studio is an unknown entity operating its business at 3457 Via Montebello, Suite 152, Carlsbad, CA 92009.  La Costa Studio is, and at all times mentioned herein was, a "person" as that term is defined by 47 U.S.C. § 153(39).  La Costa Studio is an eyelash salon and one of 37 Amazing Lash franchises located in California.[3] At the direction of franchisor Amazing Lash Franchise, and formerly by NSG, La Costa Studio markets and sells Amazing Lash beauty products, including mascara, cleanser, and eyelash extensions, and eyelash extension services to thousands of consumers in southern California.

---

[3] *See* https://www.amazinglashstudio.com/locations.

SECOND AMENDED CLASS ACTION COMPLAINT

32.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as a Doe, and who are legally responsible in some manner for the unlawful acts referred to herein, are unknown to Plaintiff at this time. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as Does when such identities become known.

33.     Plaintiff is informed and believes, and thereon alleges, that all times material hereto and mentioned herein, each Defendant sued herein was the agent, servant, employer, joint venture, partner, subsidiary, parent, division, alias, and/or alter ego of each of the remaining defendants and was, at all times, acting within the purpose and scope of such agency, servitude, employment, ownership, subsidiary, alias, and/or alter ego and with the authority, consent, approval, control, influence, and ratification of each remaining defendant sued herein.

## V.     GENERAL ALLEGATIONS

34.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as through fully stated herein.

35.      On several occasions, Plaintiff visited the La Costa located at in La Costa Town Square, 3457 Via Montebello Suite 152, Carlsbad, California 92009, to receive an eyelash extension service. On one occasion, Plaintiff was required to input her personal information, including her cell phone number, into the point of sale registry at the La Costa Studio as part of the eyelash extension service.  In doing so, Plaintiff did not provide express written consent to receive any SMS text message marketing and advertisement messages, nor was Plaintiff asked for any such consent.

36.     Between October 12, 2018 and March 25, 2019 Plaintiff received several advertising and marketing SMS text messages on her personal cell phone.  For instance, the advertising and marketing SMS text message Plaintiff received on October 12, 2018 read:

Want Full Luxurious Lashes? Don't miss our HALLOWEEN Special! FREE Volume Upgrade ($65 Value) w/Our Intro Offer of $89.99 for Full Set of Lashes. http://bit.ly/BookOnlineLC Amazing Lash Studio La Costa 760-452-4522 Reply STOP to stop msgs.

37.     On each relevant occasion alleged herein, Plaintiff received SMS text messages from Defendants that included similar advertising and marketing content as that alleged above.

38.     Plaintiff is informed and believes and thereon alleges that the text messages she received between October 12, 2018 and March 25, 2019 were part of a corporate-led, system-wide marketing strategy to promote the Amazing brand and generate business growth in Amazing Lash franchise locations, including, but not limited to, La Costa Studio. Upon information and belief, Amazing Lash Franchise, and formerly NSG, exercised control over or had the right to control the text-spam advertisements sent to Plaintiff and other members of the Class.

39.     The telephone number to which the subject text messages were sent was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls and texts pursuant to 47 U.S.C. § 227(b)(1).

40.     The embedded Uniform Resource Location (URL) link in the October 12, 2018, SMS text message links to a website that, on information and belief, is maintained and/or operated by Amazing Lash Franchise. The website contains a dropdown menu from which a franchise location can be selected. Once a franchise location is selected from the dropdown, the franchise location's address, phone and email address automatically populates on the webpage. When embedded URL link from the October 12, 2018 text is entered in a web browser, the aforementioned website is accessed with La Costa Studio information pre-selected in the dropdown menu, though users can select other franchise locations. The ability to select other franchise locations within the link indicates that the website is maintained by franchisor, Amazing Lash Franchise. A snapshot of the embedded link website is attached as ***Exhibit A***.

41.     Plaintiff is informed and believes and thereon alleges that during the Class Period Defendants NSG and La Costa Studio, and subsequently Amazing Lash Franchise and La Costa Studio, engaged the use of an automatic telephone dialing system ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), to send prerecorded, unsolicited text messages to cellular telephone numbers acquired in-store at Amazing Lash franchise locations, such as Plaintiff's experience at La Costa Studio, or online through Amazing Lash Franchise's website and/or social media pages.  These messages were designed to induce consumers to purchase Amazing Lash brand products and/or services.

42.     On information and belief, Defendants have sent, or caused to be sent, thousands of text messages to unsuspecting customers, like Plaintiff, who did not give their prior express written consent to be so contacted, through the use of an ATDS. The ATDS, including the software system used to send unsolicited texts to Plaintiff, has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.  Plaintiff is further informed and believes and thereon alleges that the system used to send the offending text messages uses software that can store a database of cellphone numbers and then automatically send text messages to those stored cellphone numbers.

43.     The texts messages that Plaintiff received from October 12, 2018 through March 25, 2019 are typical of the unsolicited text messages which Defendants, and each of them, have sent or caused to be sent to consumers across California and the United States in that the texts were impersonal in nature, contained general advertising, marketing and/or promotional content, and were sent repeatedly without variation in that they were for marketing purposes.  These factors reasonably indicate, and did so indicate to Plaintiff, that the text messages, like those received by Plaintiff, were sent *en masse* using an ATDS, especially considering that Plaintiff did not provide her consent to receive any such text messages or otherwise have any other knowledge aforehand that she would receive the illegal text messages.

SECOND AMENDED CLASS ACTION COMPLAINT

44. Further, the text messages that Defendants sent, or caused to be sent, to Class Members, including Plaintiff, shared characteristics which, *inter alia*, support the allegation that an ATDS was used, and include, but are not limited to, the following:

    a. The text messages were uninvited and unsolicited;

    b. The text messages were sent without prior express written consent;

    c. Each of the text messages cost money for its recipient to receive it, either in the form of per-text charges or data usage;

    d. The text messages contained limited-time promotional offers on Amazing Lash brand products and/or services. For example, October 12, 2018 text message Plaintiff received offered a free "Volume Upgrade ($65 Value)" with an "Intro Offer of $89.99 for Full Set of Lashes" as part of the "Halloween Special". The inclusion of "Halloween Special" reasonably indicates, and did indicate to Plaintiff, that the marketing offer was for a limited time;

    e. The text messages contained a link for online appointment booking;

    f. The text messages included "opt out" instructions by which the text message represented that recipients would not receive future text messages if they replied to the text message with a text message of their own or else called a telephone number;

    g. The text messages were sent through an automated system, not a live person;

    h. The transmission of each text message utilized a portion of the cellular telephone infrastructure of at least one cellular telephone service provider. For example, each text message had to be routed through at least one cellular telephone service provider for each Class Member to receive the text message;

    i. Each text message caused Plaintiff and Class Members to lose limited storage capacity on their cellular telephones;

    j. None of the text messages provided the Plaintiff or Class Members an opportunity to question the veracity of the offers in these text messages immediately upon their receipt;

SECOND AMENDED CLASS ACTION COMPLAINT

k. The text messages invaded the privacy of Plaintiff and Class Members;

l. The text messages annoyed and harassed Plaintiff and Class Members;

m. The text messages inefficiently used cellular telephone services such as to cause higher prices for consumers, including Plaintiff; and

n. The text messages caused injuries and damages to Plaintiff's and Class Members' property in accord with proof to be presented at trial.

45. In negligent, reckless, conscious, and/or willful disregard of the illegality and wrongfulness of sending the aforementioned text messages, of the injuriousness of sending these text messages, and of any complaints made by recipients of such messages, the Defendants, and each of them, caused, authorized, permitted, directed, or else contracted for unsolicited text messages to be sent as referenced in this Complaint.

46. Defendants send, or cause to be sent, texts to Plaintiff and the Class using an ATDS for advertising and marketing purposes *only*—not for emergency purposes. None of Defendants is a tax-exempt nonprofit organization—they are for-profit business entities. And since no Defendant is a covered entity or a business associate under HIPAA, they do not deliver health care messages to customers. Therefore, the text messages included or introduced an advertisement or constituted telemarketing pursuant to 47 C.F.R. § 64.1200(a)(2) and Defendants are required to – but do not – obtain prior express written consent from customers prior to sending such texts. Plaintiff did not provide prior express written consent pursuant to 47 U.S.C. § 227(b)(1)(A) to receive the aforementioned text messages pursuant to 47 C.F.R. § 64.1200 subparts (a)(2) and (f)(8)(i).

47. None of Defendants has met the requirements for prior express written consent stated in 47 C.F.R. § 64.1200(f)(8). There are no disclosures regarding the texts on any iteration of Defendants' website or social media webpages (either pre- or post-August 2018) or in the Amazing Lash privacy policy (which is generally applicable to all

Amazing Lash franchises, including La Costa Studio),[4] Plaintiff and the Class have not provided their signatures, whether in hard copy, electronically, or digitally, to any Defendant, and there is no "clear and conspicuous" disclosure.

48.    Thus, the text messages alleged hereinabove violated 47 U.S.C. § 227(b)(1).

49.    As a proximate consequence of Defendants' conduct alleged herein, Plaintiff and Class Members received unsolicited commercial text messages which caused injury to Class Members, including Plaintiff, as well as to their property.

50.    Absent a legal remedy, Class Members, including Plaintiff, and the public at large, have no protection from Defendants and others like them from causing the transmission of an endless series of unsolicited commercial text messages to their cellular telephones.

## VI.    <u>CLASS ACTION ALLEGATIONS</u>

51.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as through fully stated herein.

52.    This lawsuit is brought on behalf of Plaintiff and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) to recover the maximum statutory penalties permitted by 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(b)(3)(C) for repeated violations of the TCPA and 47 C.F.R. § 64.1200 as alleged herein. Plaintiff seeks certification of the following Classes:

**Nationwide Class**

All persons in the United States who received a text message which includes or introduces an advertisement or constitutes telemarketing from Amazing Lash Studio and any affiliated entities under the Amazing Lash brand from four years prior to the filing of the action in this matter to the present, which text message was not made for emergency purposes, was not made by a tax-exempt nonprofit organization, did not deliver a health care message, or was not made with the recipient's prior express written consent.

---

[4] *See* https://www.amazinglashstudio.com/about-us/privacy-policy.

SECOND AMENDED CLASS ACTION COMPLAINT

**California Class**

All persons in the state of California who received a text message which includes or introduces an advertisement or constitutes telemarketing from Amazing Lash Studio and any affiliated entities under the Amazing Lash brand from four years prior to the filing of the action in this matter to the present, which text message was not made for emergency purposes, was not made by a tax-exempt nonprofit organization, did not deliver a health care message, or was not made with the recipient's prior express written consent.

53. Excluded from the Class definitions are Defendants, their corporate parents, subsidiaries and affiliates, officers and directors, and any entity in which Defendants have a controlling interest, and the legal representatives, successors, or assigns of any such excluded persons or entities. Further excluded are Plaintiff's counsel and the assigned Judge and the Judge's family.

54. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: Defendants, and each of them, either directly or through their agents, illegally contacted Plaintiff and Class members via their cellular telephones by using an automatic telephone dialing system to send marketing text messages, thereby causing Plaintiff and the Class members to incur certain cellular charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and in so doing, Defendants also invaded the privacy of, inconvenienced and damaged Plaintiff and the Class members.

55. This suit seeks only damages for recovery of economic injury on behalf of the Class and injunctive relief to halt the illegal practices alleged herein, and it expressly is not intended to request any recovery for personal injury or claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned through further investigation and discovery.

56. ***Numerosity.*** The members of this Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to

Plaintiff at this time, Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds if not thousands of members.

57. ***Existence and Predominance of Common Questions of Law and Fact.*** The common questions of law and fact, which arise from conduct as alleged hereinabove, exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to the following:

a. Whether each Class member provided written consent to receive advertising or telemarketing texts from any Defendant;

b. Whether any Defendant sent, or caused to be sent, advertising or telemarketing text messages to customers' cellular telephone lines via an automatic telephone dialing system or an artificial or prerecorded voice;

c. Whether such texts were for commercial purposes;

d. Whether such texts were for commercial purposes but did not include or introduce an advertisement or constitute telemarketing;

e. Whether such texts were for emergency purposes;

f. Whether any Defendant is a tax-exempt nonprofit organization;

g. Whether any Defendant is a "covered entity" or "business associate" as those terms are defined in the HIPAA Privacy Rule, 45 C.F.R. § 160.103;

h. Whether the texts sent as alleged hereinabove were for the purpose of delivering a "health care" message as that term is defined in the HIPAA Privacy Rule, 45 C.F.R. § 160.103;

i. Whether the text messages, as alleged hereinabove, violate the TCPA (47 U.S.C. § 227) and 47 C.F.R. § 64.1200;

j. Whether Class members are entitled to statutory damages afforded under 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C); and

k. Whether Plaintiff and Class members are entitled to attorneys' fees under Cal. Code of Civ. Proc. § 1021.5.

58.   *Typicality.*   The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct and the relief sought is common. Plaintiff received at least one marketing text message without providing prior express written consent to any Defendant, and therefore, Plaintiff, like every other Class member, was exposed to virtually identical conduct and is entitled to civil penalties in amounts of $500.00 up to $1,500.00 per occurrence/violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).  On information and belief, the text messages received by Plaintiff were typical of the text messages received by other members of the Class during the Class Period.

59.   *Adequacy of Representation.*   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and she has no conflict of interest with other Class members. Plaintiff has also retained experienced counsel who are competent in multi-party, class, and civil litigation. Plaintiff seeks on behalf of herself and the entire Class, on grounds generally applicable to the entire class: a determination of liability; declaratory relief; and the maximum statutory penalty permitted by 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

60.   *Superiority.*   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the likelihood of individual Class members prosecuting separate claims is remote, and individual Class members do not have a significant interest in individually controlling the prosecution of separate actions. In this action, the statutory damages to which each individual Class member is entitled are relatively small, and the expense and burden of individual litigation would make it impracticable for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them, thereby allowing Defendants' unlawful conduct to continue unabated. Further, even if Class members could afford such individualized litigation, the court system could not: individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, and it would increase the delay

SECOND AMENDED CLASS ACTION COMPLAINT

and expense to all parties and the court system from the issues raised by this action. By contrast, the class-action device provides the benefits of adjudication of these issues in a single proceeding, uniformity of decision, and comprehensive supervision by a single court, and it presents no unusual management difficulties under the circumstances here.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227, *et seq.*

61.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as through fully stated herein.

62.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227.

63.    Defendants either directly or through their agents, knowingly and/or willfully contacted, or caused to be contacted, Plaintiff and Class members via their cellular telephones through an automatic telephone dialing system to place advertising and/or telemarketing texts.  Defendants knew or should have known that none of the texts were/are exempt under 47 U.S.C. § 227(b)(2)(B) or 47 C.F.R. §§ 64.1200(a)(2) or (a)(3).  Therefore, Defendants knew that they, and each of them, were required to obtain prior express written consent pursuant to 47 C.F.R. §§ 64.1200(a)(2) and (a)(3) prior to sending, or causing to be sent, these advertising and/or telemarketing texts and acted purposefully in all respects as alleged hereinabove. Yet Defendants did not and do not obtain prior express written consent or even prior express consent (under 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B)). Therefore, Defendants, and each of them, has committed and continues to commit knowing and/or willful violations of the TCPA.

64.    As a result of the knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages for each

and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and (b)(3)(C) from Defendants, and each of them.

65.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such intentional conduct in the future.

**SECOND CAUSE OF ACTION**
**Negligent Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227, *et seq.***

66.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67.     The foregoing acts and omissions constitute numerous and multiple negligent violations of the TCPA, including but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227.

68.     If Defendants' violations of the TCPA were not knowing and/or willful, then Defendants negligently violated the TCPA. Defendants, either directly or through agents, contacted, or caused to be contacted, Plaintiff and the Class members via their cellular telephones through an automatic telephone dialing system to place advertising and/or telemarketing texts. None of the texts were/are exempt under 47 U.S.C. § 227(b)(2)(B) or 47 C.F.R. §§ 64.1200(a)(2) or (a)(3). Yet Defendants did not and do not obtain prior express written consent (under 47 C.F.R. §§ 64.1200(a)(2) and (a)(3)) prior to sending these texts. Therefore, Defendants have violated and continue to violate the TCPA.

69.     As a result of the violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such negligent conduct in the future.

**THIRD CAUSE OF ACTION**
**Violations of Restrictions on Telemarketing and Telephone Solicitation**
**47 C.F.R. § 64.1200**

71.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

SECOND AMENDED CLASS ACTION COMPLAINT

72. The amendments to 47 C.F.R. § 64.1200(a)(2), which became effective on October 16, 2013, require that Defendants obtain prior express written consent before sending texts using an automatic telephone dialing system to the cellular telephones belonging to Plaintiff and the Class because Defendants do not send its texts for emergency purposes, is not a tax-exempt nonprofit organization, and does not deliver health care messages to customers as a covered entity or business associate under HIPAA.

73. Prior express written consent must constitute "an agreement, in writing, bearing the signature of the person called," with a "clear and conspicuous disclosure" informing the signatory that she is authorizing the seller to deliver telemarketing calls using an automatic telephone dialing system and that she is not required to sign the agreement as a condition of making a purchase from the seller. *See* 47 C.F.R. § 64.1200(f)(8). There are no disclosures regarding the texts on Defendants' website or in its privacy policy, and Plaintiff and the Class have not provided their signatures, whether in hard copy, electronically, or digitally, to Defendant.

74. Therefore, Defendants have violated 47 C.F.R. § 64.1200, and Plaintiff and the Class are entitled of an award of $500.00 to $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. §§ 227(b)(3)(B) and (b)(3)(C), as well as injunctive relief.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment as follows:

A. Certifying this case as a class action to afford the putative class members the procedural benefit of the class-action device and to avoid the multiplicity of individual actions;

B. Certifying Plaintiff as the class representative and her attorneys, Todd D. Carpenter and Carlson Lynch, LLP, as Counsel for the Class;

C. Awarding Plaintiff and the Class members the maximum statutory penalty permissible pursuant to 47 U.S.C. § 227(b)(3)(B) and/or 47 U.S.C. § 227(b)(3)(C);

SECOND AMENDED CLASS ACTION COMPLAINT

D.    A declaration of the rights and liabilities of the parties;

E.    Injunctive relief enjoining Defendants from committing further violations of law as alleged herein;

F.    Awarding Plaintiff and the Class members pre-judgment and post-judgment interest according to California law;

G.    Awarding Plaintiff and Class members attorneys' fees and costs; and

H.    Awarding Plaintiff and Class members any such other and further relief as may be appropriate.

**IX.   DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims herein so triable.

Dated: January 28, 2020               **CARLSON LYNCH, LLP**

*/s/ Todd D. Carpenter*

Todd D. Carpenter (CA 234464)
*tcarpenter@carlsonlynch.com*
Scott G. Braden (CA 305051)
*sbraden@carlsonlynch.com*
1350 Columbia St. Ste. 603
Tel: (619) 762-1900
Fax: (619) 756-6991

*Attorneys for Plaintiff*
*and the Proposed Class*

# EXHIBIT A





## BOOK AN APPOINTMENT
### Online.

Choose a location:

La Costa ▾

Choose a service:

Choose a service ▾

Choose an add-on:

--None Selected-- ▾

Service provider:

Any employee ▾

**ADD SERVICE**

## Contact Us

3457 Via Montebello Suite 152, La Costa, CA 92009

Phone: **760-452-4522**

Email: lacosta@amazinglashstudio.com

exactly how I wanted them to. Everything was great!

**Recent visit**

*By Lauren Rosemann on December 19, 2019*

★ ★ ★ ★ ★